IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIAN YUAN PAN | : | CIVIL ACTION |
| v. | : | |
| THE HONORABLE JOHN ASHCROFT, ATTORNEY GENERAL, USA | : : | NO. 02-2712 |

M E M O R A N D U M

ROBERT F. KELLY, SR. J.                                   JULY 2, 2002

      The Petitioner, Tian Yuan Pan, ("Pan") is a citizen and subject of the Peoples' Democratic Republic of China through birth there on December 21, 1969.  He entered the United States illegally in October 1992.  On June 18, 1997 he was convicted of robbery in Chicago, Illinois and sentenced to 42 months imprisonment.  This conviction apparently involved a home invasion.  In August 1997, Pan was indicted in the Southern District of New York on a multi-count indictment, charging hostage taking, alien smuggling, and related crimes.  On May 24, 2000 Pan was sentenced to 18 months imprisonment on two Counts of racketeering and possession of a firearm in relation to a crime of violence.

      In August 2000 Pan was released from the Bureau of Prisons' custody ("BOP") to the Immigration and Naturalization Service ("INS").  On August 30, 2000, the INS issued a Notice of Intent to Issue an Administrative Removal Order.  See Attachment to Govt's. Response.  This procedure is authorized by 8 U.S.C. § 1228(b).  In the case of an illegal alien (as opposed to a lawful permanent resident), convicted of an aggravated felony, the Immigration and Nationality Act ("INA") dispenses with a hearing before an Immigration Judge and

administrative appeals.  The purpose of the Notice is to permit the alien to refute the allegations of alienage or deportability; absent that showing, the agency issues an Administrative Order.  No "discretionary" relief or waivers are permitted.  8 U.S.C. § 1228(b)(5).

Pan did not attempt to rebut the allegations and on September 19, 2000 the District Director issued an Administrative Removal Order.  See Attachment to Govt's. Response.

On December 19, 2000, the INS conducted a custody review of Pan's case.  The reviewing officer concluded his report with the following comments and recommendations:

> Subject has two very serious convictions.  It appears as is he was a member of the Chinese Street gang the 'Flying Dragons', and was involved in the Kidnapping (sic), extortion and Robberies of several individuals.  The PSI indicates that subject was involved with numerous violent offense in which weapons were used.  While he has been incarcerated he has continued to engage in assaultive behavior and the possession of weapons.  Subject has only submitted two certificates from prison programs and letter of support from a cousin in NYC.  There is no indication that subject no longer poses a threat to society so that he would not return to his criminal enterprise once released.
>
> Subject entered the U.S. without inspection and never adjusted status.  He has not supplied any identity document to the INS, which would help to establish his identity or aid in the issuance of a travel document.  He has not submitted any substantive release plan for his release.  Therefore, I consider this subject to pose a flight risk if he were released.  See Attachment to Govt's. Response.

On February 12, 2002 the INS again determined that Pan was a danger and a flight risk, and reaffirmed thedecision to detain him.  On May 6, 2002 Pan filed the habeas corpus petition presently before the Court alleging that his release was mandated by the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491 (2001).

Once Pan's deportation order became final, the Attorney General had a period of

90 days to remove him. See 8 U.S.C. § 1231(a). The 90-day term is referred to as the "removal period." The removal period starts at the latest of three points: the date the order became administratively filed; the date of any reviewing court's final order; or the date the alien is released from criminal confinement. See 8 U.S.C. § 1231(a)(1)(B)(I)-(iii).

During the removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2). If the INS cannot expel the alien in the 90 day "removal period", the Attorney General is obliged to either release the alien, or detain hm subject to conditions under 8 U.S.C. § 1231(a)(6).[1]

Petitioner relies on the case of Zadvydas v. Davis, supra, which held that Zadvydas' continued detention was not permissible absent some showing that he could be removed; i.e., that some country would accept him. The Supreme Court prescribed a presumptive period of post-order detention of six months. After six months, if the alien can show the court "good reason to believe that there is no likelihood of removal in the reasonably foreseeable future," the Government must then rebut the alien's showing in order to continue detention. 121 S.Ct. at 2505. The Court was careful to note that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Zadvydas has no application to Pan. The Zadvydas Court was careful to

---

[1] (6) Inadmissible or criminal aliens

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

distinguish between the due process rights of detained aliens who have "gained entry" and the rights of aliens like Pan who have not "gained entry;" the Court noted that the distinction "runs throughout immigration law," and noted that Fifth Amendment due process still has minimal or no application to aliens seeking admission or otherwise outside of the borders; <u>Zadvydas</u>, 121 S.Ct. at 2500-02, declining to overrule <u>Shaughnessy v. United States ex rel. Mezei</u>, 345 U.S. 206, 73 S. St. 625 (1953). The <u>Zadvydas</u> Court confirmed that "excludable/inadmissible" aliens seeking entry have no constitutional right to be at large in this country, and may be detained indefinitely.[2] <u>Zadvydas</u> at 221 S. Ct. at 2500-02. <u>Cf.</u>, <u>Chi Thon Ngo v. Immigration and Naturalization Service</u>, 192 F.3d. 390, 394-395 (3rd Cir. 1999). (There is no constitutional impediment to indefinite detention of an alien with criminal record under final Order of exclusion, deportation or removal if (1) there is possibility of his eventual departure; (2) there are adequate and reasonable provisions for grant of parole; and (3) detention is necessary to prevent risk of flight or threat to the community).

Pan was and is inadmissible, and was never admitted. After 1996, the test is no longer whether he "gained entry" but whether he has been "admitted."

For these reasons, we enter the following Order.

---

[2]The INA used the term "excludable" until 1996, when it was changed to "inadmissible."

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIAN YUAN PAN | : | CIVIL ACTION |
| v. | : | |
| THE HONORABLE JOHN ASHCROFT, ATTORNEY GENERAL, USA | : : | NO. 02-2712 |

O R D E R

AND NOW, this 2nd day of JULY, 2002, upon consideration of the Petition for Habeas Corpus, it is hereby

ORDERED that the Petition be and the same is hereby DENIED.

BY THE COURT:

_____
ROBERT F. KELLY,   Sr.  J.